## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES CARREKER,

    *Plaintiff*,

*v.*

S. ADAMS, BAKER, OWENS,
RODGERS, TAPPENDEN, and
ZISCHKE,

    *Defendant*s.[1]

_____/

CASE NO. 10-CV-10746

DISTRICT JUDGE MARIANNE O. BATTANI
MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT
(Doc. 34)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

### II.    REPORT

#### A.    Introduction & Procedural History

On February 16, 2010, Plaintiff, a state prisoner currently housed at the Macomb Correctional Facility in Lenox, Michigan, filed this *pro se* federal civil rights complaint in the United States District Court for the Western District of Michigan. On February 23, 2010, this case was transferred to the Eastern District of Michigan. (Docs. 2, 3.) Plaintiff's complaint alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when the defendants used excessive force while restraining him on March 4, 2009. (Doc. 1.) The events

_____

[1]Defendants Washington, Jeff White, Balmes, Patricia Caruso, and Michigan Department of Corrections were dismissed from the case on April 8, 2010. (Doc. 5.)

forming the basis for the complaint occurred while Plaintiff was housed at the Egeler Reception & Guidance Center in Jackson, Michigan.

On June 25, 2010, U.S. District Judge Marianne O. Battani entered an order referring pretrial matters to the undersigned magistrate judge. (Doc. 12.) On May 4, 2011, after the close of discovery, the Court entered an order setting dispositive motion deadlines. (Doc. 33.) Plaintiff filed the instant motion for declaratory judgment on May 13, 2011. (Doc. 34.) Defendants responded to that motion on June 3, 2011, contending that a genuine issue of material fact precludes the granting of Plaintiff's motion. (Doc. 35.) Defendants did not file any dispositive motions themselves and Defendants construed Plaintiff's motion as one for summary judgment. (*Id.*) The Court also construes Plaintiff's motion as one for summary judgment and finds that, pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.    Summary Judgment Standards**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving

party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C.    Governing Law

It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his

medical needs or his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.

Ed. 2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

> A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, sufficiently serious [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the unnecessary and wanton infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with deliberate indifference.

*Davis v. Brian*, No. 98-1810, 1999 WL 503522, at *3 (6th Cir. July 9, 1999) (unpublished)

(internal citations and quotations omitted). "Obduracy or wantonness, not inadvertence or good

faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir.

1992).

In the context of prison discipline, a plaintiff must prove an unnecessary and wanton

infliction of pain or the infliction of pain without penological justification. *Rhodes v. Chapman*,

452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Under the objective inquiry in this

context, the question is whether "contemporary standards of decency" have been violated. *Hudson

v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "When prison officials

maliciously and sadistically use force to cause harm, contemporary standards of decency are

always violated." *Id.* Thus, a prisoner need not prove a significant injury. *Moore v. Holbrook*, 2

F.3d 697, 701 (6th Cir. 1993). Under the subjective component, the inquiry involves "whether

force was applied in a good faith effort to maintain or restore discipline or maliciously and

sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106

S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Toward that end, "officials confronted with a prison

disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and

visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6.

4

Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley,* 470 U.S. at 320.) The factors to be analyzed when considering the conduct of prison officials are: (1) the need for the application of force; (2) the relationship between the need for force and the amount used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of the forceful response; and (5) the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. This analysis must be made in harmony with the Supreme Court's admonition that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley*, 475 U.S. at 321-22. Physical restraints are constitutionally permissible where there is a penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 677750, at *1 (6th Cir. Feb. 15, 1996).

**D.    Discussion**

In the instant case, Plaintiff alleges that "[o]n March 4, 2009, at approximately 0700, Plaintiff had his itinerary (day pass) signed by C/O Rodgers to get permission to pick up medication at health services" when "C/O Rogers told Plaintiff that he was 'going to get [Plaintiff's] ass,' in retaliation for a 'not guilty' finding on a misconduct C/O Rodgers had written against Plaintiff." (Compl., Doc. 1 at 3-4.) "Approximately one-half hour later, Plaintiff returned and found that his cell had been searched and left in shambles . . . ." (*Id*. at 4.) Plaintiff responded by "proceeding to the Resident Unit Manager's (RUM Washington) office . . . [and] got RUM Washington's attention through his office window, but RUM Washington never responded." (*Id*.)

Plaintiff states that "C/O Zischke gave a direct order to Plaintiff to 'lock in,'in which an inmate is to return to his cell and shut the door." (*Id*.) However, although Plaintiff avers that he

5

returned to his cell, Defendants maintain that Plaintiff "refused to lock in." (Owens Incident Report, Doc. 35 at Ex. A.) Instead, Plaintiff states that "C/O Owen came to Plaintiff's cell and told him to stand up and turn around. Plaintiff stated that he couldn't be cuffed as he had only one hand. Plaintiff then had one arm cuffed to a belt loop." (Doc. 1 at 4.)

The parties agree that Defendant Owen then directed Plaintiff to "'walk down the hall,' which he did." (*Id*.) However, the parties' recitation of the events diverge from this point on. Plaintiff states that "[w]hen he felt a shove from behind, he stopped moving and noticed C/O Zischke directly behind him." (*Id*.) On the other hand, Defendants contend that Plaintiff "then stopped and backed into Zischke, bumping her," so Zischke "pushed the [Plaintiff] away from her." (Doc. 35 at Ex. A.)

Plaintiff states that C/O Owen then "grabbed Plaintiff by the arm and called for back-up from other C/Os." (Doc. 1 at 4.) Whereas, Defendant Owens indicated that he called for back-up to help escort Plaintiff to "1 North Base" immediately after Plaintiff refused to lock in. (Doc. 35 at Ex. A.)

Plaintiff then states that when he "tried to remove his arm from C/O Owens' grasp, Plaintiff was tackled by the responding C/Os, who then started punching and choking Plaintiff." (Doc. 1 at 4.) Defendant Owens stated that he "tried to grab [Plaintiff's] arm and turn him away from her [Zischke]," whom Plaintiff had either inadvertently or intentionally bumped into. (Doc. 35 at Ex. A.) Defendant Owens further states that Plaintiff "then began swinging at [Owens], at which time [Owens], C/O Rogers, C/O Tappenden, [and] C/O Baker attempted to restrain [Plaintiff]." (*Id.*) Because Plaintiff was "still struggling," Owens "put [his] thumb behind [Plaintiff's] right ear for a pain compliance" and Plaintiff "yelled 'O.K. O.K., I'm good, I'm good.'" (*Id.*) Defendant Zischke adds that Plaintiff was "threatening to 'kick all their asses'[,] . . . continued to fight . . . [and that]

throughout this incident, it was very clear that [Plaintiff] was inciting to riot as well, trying to get other prisoners involved [such that] [t]he block became very loud." (Zischke Incident Report, Doc. 35 at Ex. B.)

Defendant Owens indicates that Plaintiff then "fell toward [Owens], causing [Owens and Plaintiff] to go to the ground." (*Id.*) Plaintiff confirms that he "fell to the floor" and that he "could not see who was on top of him," but that he "felt his leg 'pop.'" (Doc. 1 at 4.) Plaintiff could not identify who was "on his leg." (Doc. 35 at Ex. A.) However, Defendant Adams states that he saw Plaintiff "swing his deformed left arm and hit or nearly hit an officer's face," and that Plaintiff was then "immediately pinned against the wall and then lowered in a controlled manner to the floor." (Adams Incident Report, Doc. 35 at Ex. C.)

Defendant Baker specifies that Plaintiff was swinging his left arm at C/O Zischke. (Baker Incident Report, Doc. 35 at Ex. D.) However, Defendant Rogers states that Plaintiff was swinging his arm at C/O Owens. (Rogers Incident Report, Doc. 35 at Ex. E.)

While Plaintiff was on the floor, Defendant Adams cuffed Plaintiff's right arm to his belt while Defendant Baker applied the leg irons. (Doc. 35, Exs. C and D.) Defendant Rogers indicates that, "[a]fter applying restraints, the prisoner started screaming ['my leg['], [and] medical staff [was] called . . . ." (Doc. 35 at Ex. E.) However, Defendant Tappenden indicates that when Plaintiff was helped to his feet, Plaintiff stated that he "couldn't straighten his leg to stand upon it," so Plaintiff "was seated on the stairs[,] [Tappenden] removed the leg irons, [and] medical staff was called." (Tappenden Incident Report, Doc. 35 at Ex. F.) In addition, Defendant Adams stated that after Plaintiff was "helped to his feet," he "said his leg is broken." (Doc. 35 at Ex. C.) Defendant Owens stated that Plaintiff was "handcuffed one arm to his belt and then set on the steps for medical assistance." (Doc. 35 at Ex. A.)

It is undisputed that Plaintiff was transported to Foote Hospital in Jackson, Michigan, where it was discovered that Plaintiff's leg was broken in three places. Plaintiff then underwent emergency surgery. (Doc. 1 at 4.)

Based on the incidents of March 4, 2009, Plaintiff was found guilty of five counts of major misconduct for disobeying a direct order, assault and battery, and threatening behavior. (Doc. 35 at Ex. I, J.)

Due to the differing factual accounts set forth above, I suggest that there is a genuine issue of material fact as to whether the amount of force used was proportionate to the need for use of any force. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. I further suggest that the evidence is not so one-sided that one party must prevail as a matter of law. *See Booker, supra.*

### E.    Conclusion

I therefore recommend that Plaintiff's motion be denied and the case be readied for trial.

### III.  <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*,

454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve

all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d

at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.


                                    s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                    CHARLES E. BINDER
Dated: August 1, 2011               United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: James Carreker #243649, Macomb Correctional Facility, 34625 26 Mile Road, Lenox. MI 48048-3000.

Date: August 1, 2011               By    s/Patricia T. Morris
                                   Law Clerk to Magistrate Judge Binder